# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                                      **3:04cr5/MCR**
                                                             **3:07cv264/MCR/MD**

**LARRY DION HAMMOND**

---

## REPORT AND RECOMMENDATION

This cause is before the court upon defendant's motion to vacate set aside or correct sentence and incorporated memorandum of law (doc. 203), the government's response in opposition (doc. 206) and the defendant's reply thereto. (Doc. 208). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

### Background and Procedural History

Defendant was charged in a superseding indictment with conspiracy to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine

on a date certain.  (Doc. 47) Co-defendant Tamecca Kayshonna Shaw Musa was also charged in count one of the superseding indictment.[1]

Defendant was convicted after a jury trial during which the defense presented no evidence.  The evidence at trial established that  the defendant, based in California, was in a leadership role in a cocaine conspiracy that involved transporting cocaine via couriers or "mules" who traveled by bus from California to Pensacola.  He worked in partnership with a man named Duncan Walton of California and Terence Foster of Pensacola.  Dorothy Cartwright, Tamecca Shaw Musa and Yvette Crayton testified that defendant had personally strapped packages of cocaine to them for transport to Pensacola.  Terence Foster testified about his involvement with conspiracy for  for around nine months until he began to cooperate with the DEA after agent Charles Gravat paid him a visit at his home and the events that transpired thereafter.

Defendant was held accountable for more than 15 but less than 50 kilos of cocaine and thus had a base offense level of 34.  The PSR noted that defendant was responsible for the distribution of at least 32 kilos of cocaine.  (PSR ¶ 44).  He received a four-level adjustment under 3B1.1(a) due to his leadership role in the offense, (PSR ¶ 47) and his total offense level was 38.  (PSR ¶ 53).  The defendant had six criminal history points, but because he was classified as a career offender due to two prior felony drug convictions, his criminal history category was automatically VI.  (PSR ¶ 54).  Defendant faced a statutory mandatory minimum penalty of life imprisonment on Count 1, and a statutory minimum term of ten years and a maximum of life imprisonment on Counts 2 and 3.  (PSR ¶ 81).  His applicable guidelines ranges was 360 months to life imprisonment, but  pursuant to §5G1.1(c), since the statutorily required minimum sentence for Count 1 (Life) was greater than

---

[1]Co-defendant Kimberly Renee Clarke was named in the original indictment, but she pleaded guilty pursuant to a written plea and cooperation agreement before the superseding indictment was issued. (Doc. 1, 27).

the minimum of the applicable guideline range, the guideline range became life imprisonment as to Count 1 only. (PSR ¶ 82).

Defendant did not have any objections to the presentence report that affected the sentencing guidelines, the statutory penalties, or the mandatory minimum penalties. However, defendant continued to maintain his innocence and deny his involvement in the charged offense and deny that he was the supplier for Mr. Walton. He also denied knowing Mr. Thomas as alleged in Paragraph 59 of the presentence report, and denied being involved in gang activity as alleged in Paragraph 60 of the report. (PSR ¶ 104).

Defendant was sentenced to a term of life imprisonment. (Doc. 162). He appealed, arguing that the district court erred by refusing to grant a mistrial after government witnesses, on two separate occasions, made improper references to his criminal record. The Eleventh Circuit found no abuse of discretion, noting that it doubted that the improper testimony substantially influenced the jury's guilty verdicts, given the weight of the evidence, and finding no indication of prosecutorial misconduct in procuring the testimony. (Doc. 183 at 3).

### Legal Analysis

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225,

1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial

process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008); *United States v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en

banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Counsel is not ineffective for failing to preserve or argue a meritless claim. *Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008); see also

*Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence)*; Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Each of defendant's grounds for relief alleges deficiencies in the performance of either trial or appellate counsel. The government opposes the motion in its entirety.

**Ground One**

Defendant first contends that trial counsel Ronald W. Johnson failed to adequately and properly challenge compliance with the Jury Selection and Service Act procedures in a timely fashion.

Title 28 U.S.C. § 1867 provides the guidelines for challenging compliance with jury selection procedures. The statute provides in relevant part:

> In criminal case, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

28 U.S.C. § 1867(a).

Voir dire took place in this case on June 27, 2005. (Doc. 120). Counsel filed a motion to stay trial on June 28, 2005. In the motion counsel noted that the jury venire consisted of 75 persons, none of whom were African-American, that the jury panel excluded a distinctive community group, that defendant, who is African American, and his counsel first became aware that there were no African-Americans on the venire panel when they arrived for July selection on June 27, 2005. (Doc. 118). The government opposed the motion, arguing that it was untimely and without merit.

The sixth amendment guarantees a criminal defendant the right to a jury selected from a group representing a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975). However, petit juries need not mirror the community, and defendants are not entitled to a jury of any particular composition. *Id.* The only requirement is that jury wheels, pools of

names, panels or venires from which juries are drawn must not systematically exclude distinct groups in the community, and must not fail to be reasonably representative. *Id.* In order to establish a prima facie violation of the fair cross section requirement, defendant must show (1) that the group alleged to be excluded is a "distinctive group" in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is a result of a systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). The burden for establishing each of these prongs falls squarely upon the defendant. *Berryhill v. Zant*, 858 F.2d 633, 638 (11th Cir. 1988).

The government argued that the defendant's motion was untimely under the plain language of the statute because he had failed to make the challenge before jury selection. Additionally, the government argued that to the extent the defendant would argue that he did not discover that the court's jury selection plan was unconstitutional until he saw the composition of the venire in this particular case, such a claim would be without merit because the make-up of the single venire that appeared for this case was irrelevant to a determination of whether the court's jury selection plan was unconstitutional or violated the Act. Finally the government argued that the defendant did not show that the representation of African-Americans in venires in this district generally was not fair and reasonable in relation to the number of African-Americans in the district and further did not show any systematic exclusion of African-Americans in the jury selection process in the district. (Doc. 119).

The court found that the motion was untimely, citing *United States v. Paradies*, 98 F.3d 1266, 1277 (11th Cir. 1996), which expressly stated that "once voir dire begins, Jury Selection Act challenges are barred, even where the grounds for the challenge are discovered only later." (Doc. 160 at 7, citing *Paradies*, 98 F.3d at

1278).[2]  The court declined to excuse the untimely filing of the motion due to Mr. Johnson's late appearance in the case[3] noting that case law was clear that the language of the statute was to be strictly construed.  The court further noted that additionally, counsel's sworn statement in his motion was insufficient for purposes of the statute and the fact that a single venire panel did not appear representative did not automatically lead to a conclusion that there was a substantial failure to comply with the provisions of the Act.  (Doc. 160 at 8-9, 11).

In the instant motion, defendant appears primarily to re-argue the motion made by counsel without presenting any additional arguments that could have been made that would have altered the trial court's ruling on the motion.  He misstates the law, erroneously stating that if the first two elements of a prima facie violation are established, the third element, systematic exclusion, is presumed. He then cites a case from the Middle District of Alabama, wherein the court found that a particular jury selection plan for criminal cases allowed a disproportionate number of white jurors and created the potential for race discrimination.  *United States v. Clay*, 159 F.Supp.2d 1357, 1364 (M.D. Ala. 2001).  In *Clay*, the court administrator's practice of granting temporary deferrals and then upon expiration of such deferrals constructing venire lists in such a way as to prefer the previously deferred jurors over those drawn directly from a qualified wheel was a substantial violation of the Act because the deferred jurors were disproportionately white.  159 F.Supp.2d at 1364.  Defendant has provided no suggestion, much less any evidence that a similarly unconstitutional procedure is in use in this district.  Next, defendant cites *United States v. Ovalle*, 136 F.3d 1092 (6th Cir. 1998), which held that a jury selection plan that intentionally excluded non-African-American potential jurors on the basis

---

[2]Strict compliance with the time requirement of the Act has been upheld in other circuits as well.  See, e.g., *United States v. Ovalle*, 136 F.3d 1092, 1098 (6th Cir. 1998); *United States v. Bearden*, 659 F.2d 590, 595 (5th Cir. 1981); *United States v. Young*, 570 F.2d 152, 153 (6th Cir. 1978).

[3]Defendant's motion to substitute attorney was filed on June 22, 2005 (doc. 112) and granted on June 24, 2005 (doc. 115).

of the race was a substantial violation of the Act.  Again, he has provided neither a suggestion nor evidence that a comparatively unconstitutional procedure is in use in this district.

Counsel asked the court in arguing his motion to "take judicial notice that black people live in this community" and that there was "not one African American on the entire panel." (Doc. 160 at 10). Defendant has now submitted demographic information obtained from the internet showing that 30.6% of the population in Pensacola is Black[4] (doc. 203, exh. 6) and makes the conclusory claim that "one can safely assume that the African-Americans that w[ere] entitled to be jury members, w[ere] purposefully and systematically excluded from jury service." The fact that the racial composition of a single venire was a  statistical aberration does not prove purposeful and systematic exclusion from jury service.

In order to prevail on his claim, defendant must show that had counsel presented the motion in a timely fashion, or included an "adequate and proper" challenge to the compliance with the Jury Selection and Service Act, the outcome of this case would have been different.  Defendant's conclusory assertions fail to fulfill this burden, and he is not entitled to relief.

Ground Two

Defendant next claims that counsel was constitutionally ineffective when he failed to properly object, adequately challenge and/or move to strike Jury Angela Hausfeld, who he claims "could have" tainted the whole jury panel.  The law is well established that the inclusion of a biased juror in a petit jury is never harmless error and would require reversal of a conviction.  *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2001); *United States v. Martinez-Salazar*, 528 U.S. 304, 317, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (citing *Ross v. Oklahoma*, 487 U.S. 81, 85, 108 S.Ct. 2273, 101

---

[4]The Court notes that the pool of individuals from which jurors are drawn to sit in this court is geographically much broader than just Pensacola.

L.Ed.2d 80 (1988);   *Parker v. Gladden*, 385 U.S. 363, 366, 87 S.Ct. 468, 17 L.Ed.2d, 420 (1966)).   A juror may be disqualified for cause upon a showing of either actual or implied bias.   *Carpa*, 271 F.3d at  967; *United States v. Wood,* 299 U.S. 123, 133, 57 S.Ct. 177, 81 L.Ed. 78 (1936); *Brooks v. Dretke*, 418 F.3d 430, 432 (5th Cir. 2005); *United States v. Gonzalez*, 214 F.3d 1109 (9th Cir. 2000).   "The determination of implied bias is an objective legal judgment made as a matter of law and is not controlled by sincere and credible assurances by the juror that he can be fair." *Brooks v. Dretke*, 418 F.3d at 434.

Voir dire was held on June 27, 2005 to simultaneously select three criminal juries.  When prospective jurors were asked about family members or close personal friends in law enforcement, Angela Hausfeld volunteered that her boyfriend of five years, Jerry Tiboreau (phonetic) was a narcotics investigator with the Escambia County Sheriff's Department, and that he had been employed with the department for six years.  (Doc. 220 at 83-84).  No further questions were asked by the court.  In contrast, another prospective juror indicated that her next door neighbor was an investigator with the Sheriff's department, although she was not sure in what capacity, and the court verified that the neighbor was not connected with any of the cases.  (Doc. 220 at 118-119).  The court excused the entire panel of prospective jurors for lunch, then met with the attorneys to identify the panel members that needed to be addressed individually about some of their responses. (Doc. 220 at 121-131).  Ms. Hausfeld's name did not come up in that discussion, she was not brought in for individual questioning, and none of the three defense attorneys requested that she be questioned individually.  When the prospective jurors were brought back in, the court asked if any of them had strong feelings about drugs, such that they could not set aside the feelings and decide the issues fairly and impartially.  The court also asked the prospective jurors whether there was any reason that the court or the attorneys should know about that might make it difficult for them to serve as fair and impartial jurors in any of the three cases and received no response.  (Doc. 220 at 201-202).

The defendant was afforded ten peremptory challenges, and the government five. Each side used all of its peremptory challenges before jurors 11, 12 and the alternate were selected. (Doc. 121, SEALED). Angela Hausfeld was in line to be the twelfth juror selected in the panel. Because defendant had no remaining peremptory challenges and there was no basis for a challenge for cause, Ms. Hausfeld was selected as the final juror.

The following exchange transpired before the court began to take testimony on June 29, 2005:

Mr. Johnson:     Judge the only other thing is during the jury selection, you told some of the jurors that you would call them to the bench to ask them specific questions. I think one of those persons was Angela Hausfeld, who is No. 65 on the jury list. She is the girlfriend of five years of an Escambia County Sheriff's Department narcotics officer. It didn't dawn on me until she was selected that the Court never called her back up there to question her about her feelings about drugs and law enforcement and any predisposition, I guess, she might have to vote for guilty. And if there is any way that you could do that at this time, I would elect for you to do that.

The Court:     Mr. Knight.

Mr. Knight:     Your Honor, I believe that juror sat through the questioning by the Court through the entire venire panel with respect to any ties they had with law enforcement that would affect their ability to be a fair and impartial juror, and I don't thing that this particular juror gave any response that would suggest that there would be a problem with her listening to the evidence and giving a fair and impartial verdict.

The Court:     Well, the one thing that troubles me is we went through this, and it wasn't raised at the time. We even took a break, and I asked everyone to go over their notes to see if there is anyone that I had overlooked. This lady's name was not brought up to me. I do recall now that you bring it up. I think she was sitting right back over there to – on my left – to my left.
But in abundance of caution, I'll bring her in and ask her. I don't think it's going to amount to anything, but we do have an

**alternate in the event it does amount to anything, and I'll bring her in and ask her. It was someone that I had indicated an intention to speak to. I wish we had done it at the time. But, like I said, in abundance of caution, I'll bring her in.**

**(Doc. 160 at 4-5).**

**The court then directed that Ms. Hausfeld be brought to the courtroom, where the following exchange took place:**

| | |
|---|---|
| **The Court:** | **Yes. I realized, Ms. Hausfeld, that I neglected to call you in individually when I was calling in some of the other panel members to ask you about a response that you gave to one of the questions asked about family member, friend. I think you said you had a boyfriend –** |
| **Juror:** | **Boyfriend.** |
| **The Court:** | **– of some time who was employed in law enforcement. Tell me again, it's your boyfriend of five years; is that right?** |
| **Juror:** | **Yes, ma'am.** |
| **The Court:** | **And tell me – he works with the Escambia County Sheriff's Department?** |
| **Juror:** | **Yes, ma'am.** |
| **The Court:** | **Does he discuss his work with you?** |
| **Juror:** | **No.** |
| **The Court:** | **What does he do in the sheriff's department?** |
| **Juror:** | **He's a narcotics investigator.** |
| **The Court:** | **And he does not discuss his work with you?** |
| **Juror:** | **No.** |
| **The Court:** | **Do you and he socialize with other investigators and other sheriff's deputies?** |

**Juror:**             Yes, ma'am.

**The Court:**         Do they discuss their work with you?

**Juror:**             No, ma'am.

**The Court:**         Based on your knowledge of what your husband (sic) does in investigating offenses similar to the charge in this case, do you think that your impartiality would be questioned or that there would be some reason we should questions whether you could be fair and impartial?

**Juror:**             No, ma'am.

**The Court:**         There will be law enforcement officers to testify during this trial, and I don't remember if I specifically asked you this question, but if I did, I apologize for repeating myself.  Do you feel as though you would be able to sit and listen to their testimony and judge it and weigh it just as you would any other witness, or do you feel that you would be more likely to automatically believe a law enforcement officer just because they are a law enforcement officer?

**Juror:**             No, ma'am.

**The Court:**         You feel like you would listen to it and judge it as any other witness?

**Juror:**             Yes, ma'am.

**The Court:**         Is there any reason that you can think of that I haven't covered with you between Monday and today that would give cause for concern about you serving on this jury?

**Juror:**             No, ma'am.

**The Court:**         All right.  Mr. Johnson, do you wish to ask any questions?

**Mr. Johnson:**       I don't have anything, Your Honor.

**The Court:**         Mr. Knight?

Mr. Knight:          No, Your Honor.

The Court:          Thank you, Ms. Hausfeld.

**(Doc. 160 at 15-16). Based on Juror Hausfeld's responses to the questions, there was no basis for her to be dismissed, and counsel was not constitutionally ineffective for failing to make such a request.**

**Defendant now asserts that counsel's representation was deficient because he failed to ask any questions of Ms. Hausfeld. Defendant states that counsel should have asked Ms. Hausfeld to reveal the identity of her boyfriend, ie. whether it was Agent Charles Gravat or Steve Bauer. Even if Ms. Hausfeld had not identified her boyfriend by name during voir dire, which she did, the court notes that Agent Gravat is employed by the DEA and Steve Bauer, who did not testify at trial, is a detective with the Pensacola Police Department (PSR ¶ 9). Neither of these men could have been the Escambia County Sheriff Narcotics investigator to which Ms. Hausfeld referred as her boyfriend. Furthermore, there is no indication from either the PSR or the testimony at trial that the Escambia County Sheriff had any involvement whatsoever with this investigation. Defendant also posits that counsel should have asked what investigators Ms. Hausfeld and her boyfriend socialize with, to find out whether any of those investigators were involved in this case, stating that her boyfriend could have been an investigator on the case or the juror and her boyfriend could have been friends with one of the investigators. The government maintains that as part of the jury selection process, the court routinely reads aloud the witness list for the trial at issue, asks the panel members whether they know any of the witnesses, and if so, whether their knowledge of the witness would affect their ability to be fair and impartial in the case. (Doc. 206 at 14-15). Steve Bauer and Charles Gravat were included on the government's witness list (doc. 124) and there is no record indication that the juror advised the court that she knew either of the men. There is also no suggestion that she expressed any bias or lack of impartiality during the jury selection process. Rather, the only reason she was called in for**

further questioning was due to her romantic relationship with an Escambia County narcotics investigator.

Based on this record, defendant has not shown that counsel was constitutionally ineffective.  While defendant has done an admirable job of setting forth the law regarding juror bias, absent facts in his favor, he cannot prevail.  He has neither shown nor suggested that Ms. Hausfeld's responses to the court during voir dire or the individual questioning were untruthful, and he has not established or suggested facts that show such a close connection to the circumstances at hand that bias can be presumed.  See *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2001).

**Ground Three**

Defendant contends that counsel was constitutionally ineffective because he failed to request Jencks material after government witnesses testified on direct examination. Title 18 U.S.C. § 3500 is known as the Jencks Act.  This Act provides criminal defendants with a limited right to obtain certain witness statements that are in the government's possession for the purposes of cross examination.   In accordance with 18 U.S.C. § 3500(b), the right vests only after a witness called by the government has testified on direct examination, although such information is frequently provided sooner than this.

Defendant asserts that counsel was constitutionally ineffective because he failed to request Jencks material after the testimony of witnesses Cartwright-Cross, Modica, and Crayton.  He maintains that no Jencks material could have been in the possession of the defense because none of the government witnesses were impeached or cross-examined with any prior statements falling under the purview of the Jencks Act.  He asserts that had counsel preserved this claim, the court could have stricken the witnesses' testimony or declared a mistrial if the government failed to comply with 18 U.S.C. § 3500.

In response, the government states that despite defendant's assertion that counsel failed to request Jencks materials, there is no evidence that any materials discoverable under Jencks actually existed, and that if they did, that counsel had not already received the materials. Although § 3500 does not require the government to produce statements until after a witness has testified, it is the government's practice in this district to provide Jencks materials on the Friday before trial. Defendant's prior attorney, Kenneth Riddlehoover sent a letter request to AUSA Ed Knight on May 4, 2005 that included a request for Jencks material. (Doc. 206, exh. C). The government responded, fulfilling some of the defense requests and advising that Jencks material would be provided the Friday before trial. (Doc. 206, exh. D at 4). At this point, the Friday before trial, Mr. Johnson had appeared, so any remaining Jencks material would have been provided to him.

The government states that the fact that counsel did not use any statement to impeach witnesses did not prove that he did not have prior written statements of the witnesses; it could also have meant that the prior statements were consistent with testimony given at trial.

As exhibit four to his response, defendant has submitted an affidavit in which he states:

> I, Larry Hammond, during pre-trial proceedings, asked my Attorney Ronald W. Johnson if he had any statements that witnesses made against me. Attorney Ronald W. Johnson said "no" the Government did not provide me with any, if they did make any statements against you.

(Doc. 208, exh. 4). Defendant appears not to comprehend the heavy burden he faces in proving his claim. He has failed to show that Jencks material existed that was either not provided to or not used by counsel, and that counsel could have used the information at trial to impeach the witnesses, and that had counsel done so, the outcome of the proceedings would have been different. The basis for his claim is actually little more than abject speculation, and as such is insufficient to support a viable claim of ineffective assistance of counsel.

**Ground Four**

Defendant claims that trial counsel was constitutionally ineffective when he "abandoned" cross-examination on government witness James Walter McLamb and failed to object to government's exhibits 21A, 21B, 21C and 21D.

James McLamb testified that he is assigned as a single purpose narcotic K-9 working drug interdiction for the Caddo Parish Sheriff's Office in Shreveport, Louisianna. (Doc. 160 at 214-215). He testified about having arrested a Joseph Jackson on May 23, 2003 for possession with intent to distribute over 400 grams of cocaine. McLamb explained that the cocaine was strapped to Mr. Jackson, in a plastic bag with fabric softener sheets wrapped with white athletic-style tape wrapped around it. Although the package weighed 1700 to 1800 grams, the cocaine alone weighed "1400, almost 1,500 grams." (Doc. 160 at 216). McLamb identified government's exhibit 21-A as a picture of him in uniform holding the package that was removed from Mr. Jackson. Exhibit 21-B was a photograph of just the wrappings that Mr. McLamb was holding up in the previous exhibit, exhibit 21-C was a photograph of the wrappings and what was contained therein, and exhibit 21-D was a photograph of the cocaine. Each exhibit was admitted into evidence without objection and published to the jury. McLamb also identified government's exhibit 22 as a booking photo of Mr. Jackson that had previously been entered into evidence before his testimony concluded. Defense counsel had no questions.

Defendant cites case law and scholarly works regarding the confrontation clause and the right to and importance of confronting adverse witnesses. His position is not entirely clear, but he may be contending that the lack of cross examination led to jury confusion about McLamb's testimony. During deliberations, the jury sent the following question to the court:

> Judge Rodgers, How much cocaine was siezed (sic) in Louisiana? Can we add this amount to the cocaine we have in the evidence box? We'll give 10 minutes. For response. Probably around 3:00 p.m. today

(Doc. 127, exh. 1). After consultation with counsel, the court gave the following response:

> Q: How much cocaine was seized in Louisiana?
>
> A: Officer McLamb testified that 1400 to almost 1500 grams were seized from Joseph Jackson on May 23, 2003 in Louisiana.
>
> Q: Can we add this amount to the cocaine we have in the evidence box?
>
> A: Please refer to the jury instructions for answer to this question.

(Doc. 127, exh. 1 at 2). Defendant states that the jury's question "clearly reflects" that counsel should have cross-examined Officer McLamb and objected to the exhibits. However, he offers no specific suggestion as to what questions counsel should have asked McLamb on cross examination or what meritorious objections counsel could have made to the introduction of the exhibits in question.

Defendant contends in his reply memorandum that the information regarding Mr. Jackson's arrest was "irrelevant" to his case. Defendant is mistaken. The government's first witness, Dorothy Cartwright, testified that she had found out from the defendant that an individual with the nickname of "June" had been arrested in Louisiana. (Doc. 160 at 55). Ms. Cartwright stated that she had seen "June" at the defendant's mother's house, and the defendant had asked her about accompanying June to transport drugs, but she never had. (Doc. 160 at 56). She was able to identify "June" from government's exhibit 22. Furthermore, Ms. Cartwright's description of how the drugs were affixed to her for transport was strikingly similar, if not identical to what Officer McLamb described having found on Mr. Jackson's person. In light of this, there was no basis for counsel to discredit Officer McLamb through cross-examination or for a valid objection to the introduction of the four comprising exhibit 21, and counsel was not constitutionally ineffective for his failure to do so.

**Ground Five**

Defendant asserts that counsel was constitutionally ineffective when he failed to challenge, contest and/or exclude evidence introduced at defendant's trial. He cites myriad examples of the government moving to introduce exhibits as evidence and defense counsel indicating that he had no objection. He specifically references exhibits 22, 2A, 2B, 2C, 3, 5A, 5B, 6, 7, 11A-11E, 12A-12C, 13, 15A-15C, 16, 9, 10, 17A-17B, 19, 20, 30, 21A-21D, 31, 25-28. Defendant claims that counsel failed to contest the government's case, and that he abdicated his responsibility to defend his client. In his original motion he offers no basis for a meritorious objection to the introduction of any of the above-named exhibits. In his reply to the government's response, he states that counsel could have objected to the introduction to the evidence pursuant to Federal Rules of Evidence 102, 103, 401, 402, 403 and 404 without explaining how any particular rule would apply to any particular item of evidence. Such a conclusory assertion bereft of any factual support is insufficient to establish a deficiency in counsel's performance. Furthermore, even if one or more of the exhibits could have been excluded, to meet his burden under *Strickland*, defendant must also show that the outcome of the proceedings would have been different if counsel had succeeded in getting a particular item excluded. Defendant has also failed in this regard. Finally, with respect to his claim that counsel failed to contest the government's case, as the jury was instructed by the court at trial, defendant has no burden to prove his innocence or produce any evidence at all. (Doc. 127 at 2); see *Chandler v.United States,* 218 F.3d 1305, 1315 n. 15 (11th Cir. 2000) (due to the "presumption of innocence" in a criminal trial, "the defendant is not required to come forward with proof of his innocence once evidence of guilt is introduced to avoid a directed verdict of guilty." (Quoting Black's Law Dictionary 823 (6th ed.1991)). Defendant's assertion that counsel's performance was somehow violative of the sixth amendment principles set forth in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), is likewise unfounded.

## Ground Six

Defendant alleges that counsel also rendered constitutionally inefficient performance due to his failure to tender, request or pursue a "multiple conspiracy" instruction. Generally, it is for the jury to determine whether one or several conspiracies existed, but whether the defense produced sufficient evidence to sustain an instruction is a question of law. *United States v. Edouard*, 485 F.3d 1324, 1348 (11th Cir. 2007) (quoting *United States v. Chastain*, 198 F.3d 1338, 1350 (11th Cir. 1999)). In determining whether to instruct the jury on multiple conspiracies, the court must consider whether there is sufficient evidence for a reasonable jury to conclude that some of the [co-conspirators] were involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." *Id.*

In his supporting memorandum, defendant sets forth in detail the law governing multiple conspiracies and when such an instruction is appropriate. He ignores the fact that counsel did request the multiple conspiracy instruction (doc. 113 at 3) and that the issue of the multiple conspiracy instruction was considered by the court. At the charge conference, the following discussion took place:

| | |
|---|---|
| The Court: | All right. Offense instruction 13.3 dealing with multiple conspiracies, I think this is appropriate.<br>Mr. Knight, do you wish to be heard? |
| Mr. Knight: | Your Honor, I don't think that there is any evidence suggesting there was any type of multiple conspiracies. I think all of the witnesses' testimony established the conspiracy that involves Duncan Walton, the defendant in this case and themselves, and I don't think there's – for example, there is no suggestion that the cocaine was coming from different sources in different states, and so forth, Your Honor. So I just don't know that the evidence would support the instruction, and I don't know that the defense would request it. |
| The Court: | All right. Well, you may be right.<br>Mr. Johnson. |
| Mr. Johnson: | Judge, the jury might reasonably infer that if Mr. Hammond was involved in some type of conduct, it may be something separate |

> from what Mr. Walton and these other people were doing. That could be the only possible theory.

**The Court:** Well, I guess in thinking about this a little closer, my comment initially, because I thought this would be appropriate, I guess dealt with more than just my preliminary thoughts about two separate indictments that we had – at least two, if not three separate indictments, but they really do all pertain to the same conspiracy, and I think the evidence supports only one conspiracy. I have to agree with Mr. Knight on that.
Do you wish to make any more record, Mr. Johnson?

**Mr. Johnson:** No, Your Honor.

(Doc. 161 at 6-7). Defendant claims that counsel should have pursued arguments in support of the multiple conspiracy instruction, and relies on the fact that there were three separate indictments charged against the co-conspirators. Only he and Tamecca Kayshonna Shaw Musa were charged in the superseding indictment in his case. (Doc. 47). The fact that co-conspirators were charged in separate indictments is not dispositive of the question of whether the testimony established a single conspiracy versus a "rimless wheel."[5] Furthermore, Ms. Shaw Musa's testimony linked the defendant to Duncan Walton and Terrence Foster. Finally, with respect to defendant's complaint about separate indictments, the court notes that defendant himself cited Agent Gravat's trial testimony where Gravat stated that defendant had not been identified by the time other defendants, specifically Duncan Walton, had been charged. (Doc. 160 at 111-112). It is not impermissible to issue separate indictments. *See, e.g., United States v. Zangwill*, 197 Fed.Appx. 888, 889 (11th Cir. 2006) (noting co-defendants charged in separate indictment). Finally, the evidence in this case was that the defendant and Duncan Walton worked together to facilitate

---

[5]A "rimless wheel" is a conspiracy in which various defendants enter into separate agreements with a common defendant but the defendants have no connection with one another, other than the common defendant's involvement in the transaction. See *United States v. Richardson*, 532 F.3d 1279, 1288 (11th Cir. 2008). In such a case there are as many conspiracies as there are spokes. *United States v. Chandler*, 388 F.3d 796, 807 (11th Cir. 2004).

the transport of cocaine from California to Terrence Foster in Florida using young women who traveled with the cocaine taped to their bodies. There was insufficient evidence to support a multiple conspiracy instruction, as ruled by the court, and counsel was not ineffective for failing to secure such an instruction.

**Ground Seven**

Defendant's seventh ground for relief is that counsel failed to challenge the prior conviction for possession/purchase of cocaine base listed in paragraph 57 of his PSR in light of *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d (2005). In *Shepard*, the Supreme Court addressed whether a court could use police reports or complaint applications to establish whether a defendant's prior conviction for burglary qualified as a "violent felony" under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"). It found this would not be permissible, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented. 544 U.S. at 16, 125 S.Ct. at 1257.

In the case at bar, defendant was placed on notice by the notice of enhancement filed by the government on June 24, 2005 that he would be subject to the increased penalty provisions under 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii) and (b)(1)(B)(ii) because of two prior felony drug convictions. (Doc. 117). These convictions, which were identified in the notice of enhancement, were listed in the PSR in paragraphs 56 and 57. Defendant's sentence was enhanced in this case not under 18 U.S.C. § 924(e), but under § 4B1.1 of the Sentencing Guidelines. Section 4B1.1, the Career Offender provision, designates a defendant as such if he is at least 18 years of age at the time of the offense of conviction, if the offense of conviction is a felony crime of violence or a felony controlled substance offense, and the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. In this case, the court did not need to look beyond

the PSR to determine that defendant had two prior qualifying felony convictions. Paragraph 56 of the PSR stated that defendant was convicted of possession of phenciclidine and sentenced to a term of 3 years imprisonment, while paragraph 57 listed a conviction for possession/purchase cocaine base for sale with a resulting term of 72 months imprisonment. It is obvious from the penalties imposed that both offenses were felony drug offenses, and no further examination of either conviction was necessary for such a determination. Defendant's reliance on *United States v. Garza-Lopez*, 410 F.3d 268 (5th Cir. 2005) in support of his claim that the court improperly looked "into" the prior offense is inapposite, as in *Garza-Lopez*, the defendant's sentence was enhanced under § 2L1.2(b)(1)(A)(i) which authorizes an enhancement for a defendant previously convicted of a "drug *trafficking* offense." Drug trafficking offenses are a smaller subset of the "controlled substance" offenses referred to in § 4B1.1. Likewise, the analyses in *United States v. Fuller*, 453 F.3d 274 (5th Cir. 2006) (examining prior burglary conviction); *United States v. Garcia*, 470 F.3d 1143 (5th Cir. 2006) (examining prior assault conviction); and *United States v. Bonilla-Mungia*, 422 F.3d 316 (5th Cir. 2005) (examining prior sexual battery conviction) are inapposite as these cases focused on a determination of whether the prior convictions were crimes of violence, a fact not necessarily obvious from the mere name of the crime.

Finally, the court notes that an objection to the fact of the conviction would not have changed the outcome of sentencing. Defendant has never denied that he is the individual convicted of the crime identified in paragraph 57 of the PSR.[6]

**Ground Eight**

---

[6]Defendant makes much of the fact that the version of the PSR in his possession was not a "final" version, in that it does not include the docket number of the case identified in paragraph 57. The final version of the PSR reflects that the probation officer had verified that this was a felony complaint, which was not reasonably in doubt in light of the penalty imposed, and that defendant had been represented by counsel in that case. The court does not find defendant's assertions of malfeasance on the part of the probation officer or the government resulting in a due process violation to be persuasive.

Defendant claims that counsel was constitutionally ineffective because he should have challenged the "legal effect" of defendant's prior conviction for possession/purchase of cocaine base for sale under 21 U.S.C. § 851 based on *Shepard*, *supra*. As noted in ground seven, there was no basis for a *Shepard* challenge to the enhancement, and defendant has never denied that he was the person convicted of the offense identified in paragraph 57. Counsel therefore could not have been ineffective for failing to make such a challenge.

**Ground Nine**

Defendant claims that the cumulative effects of counsel's errors deprived him of a fair trial. It is true that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial might be necessary even if the errors considered individually are non-reversible. See, e.g., *U.S. v. Ramirez,* 426 F.3d 1344, 1353 (11th Cir. 2005); *United State v. Preciado-Cordobas*, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)(citing *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984)); *United States v. Adams*, 74 F.3d 1093,1099 (11th Cir. 1996); *United States v. Thomas,* 62 F.3d 1332, 1343 (11th Cir. 1995). However, "[a] defendant is entitled to a fair trial not a perfect one." *Ramirez,* 426 F.3d at 1353 (quoting *United States v. Adams,* 74 F.3d 1093, 1099-1100 (11th Cir. 1996) (citing *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953))). In this case, the court does not find that any alleged errors, either individually or in combination, compromised the defendant's constitutional rights.

**Ground Ten**

Defendant contends appellate counsel Richard Strafer, Esq. was constitutionally ineffective in the manner in which he presented defendant's appeal. As noted above, the only issue raised on appeal was whether the district court erred by refusing to grant a mistrial after government witnesses, on two separate

occasions, made improper references to defendant's criminal record. Defendant now contends that counsel should have raised additional issues.

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so. *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983); *Heath v. Jones*, 941 F.2d 1126, 1130-31 (11th Cir. 1991); *Francois v. Wainwright*, 741 F.2d 1275, 1285 (11th Cir. 1984). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Barnes*, 463 U.S. at 751-52, 103 S.Ct. at 3313. The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the appellate advocacy, which must be judged in its entirety, was effective. *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed. 2d 434 (1986). To determine whether defense counsel rendered ineffective assistance by failing to raise certain issues on appeal, the court must examine the merits of the issues the defendant alleges counsel was derelict in not raising on appeal. *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988). Of course, appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (citations omitted); see also *Lambrix v. Singletary*, 72 F.3d 1500, 1507 (11th Cir. 1996); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). And, where the case law at the time of the direct appeal is not clear on an issue, appellate counsel's performance does not fall below the "objective standard of reasonableness" for failing to raise it. *See Jones v. United States*, 224 F.3d 1251, 1258-59 (11th Cir. 2000); *Chateloin v. Singletary*, 89 F.3d 749, 754 (11th Cir. 1996). An informed decision based on reasonable professional judgment not to pursue a particular issue on appeal does

not render counsel's performance deficient. See *Griffin v. Aiken,* 775 F.2d 1226, 1235 (4th Cir. 1985).

Defendant first claims that appellate counsel was ineffective because he failed to challenge the district court's alleged abuse of discretion in allowing the testimony of Officer Florecio Montellano regarding defendant's arrest in Las Cruces, New Mexico.

After the jury had been allowed to leave on the first day of trial, the government indicated that defense counsel had requested a proffer of Mr. Montellano's testimony to the court with respect to its admissibility. (Doc. 160 at 304). Mr. Knight explained that defendant had come into the border checkpoint and was detained by Officer Montellano. He provided a false name to the agent who was ultimately able to determine his correct identity as well as the fact of the outstanding warrant. The government stated that its position was that the testimony already presented had established that defendant was in California closely monitoring the arrest and identity of the individuals who had been arrested in this case, and the fact that he gave a false name showed his concern that there could have been an outstanding warrant for his arrest, thus corroborating some of the witnesses' prior testimony. Additionally, the fact that defendant gave a false name shows some consciousness of guilt. Defense counsel argued that the evidence was not relevant, did not show any type of consciousness of guilt and that any possible relevance was outweighed by 403. The court overruled the defense objection, finding that the evidence would be relevant and corroborative of defendant's instructions to other witnesses that they should leave the area in an effort to avoid being apprehended, and that the false identification was relevant to defendant's guilty state of mind. (Doc. 160 at 306-307). The court further noted that the indictment against defendant had been handed down although it was not clear that defendant was aware of this. Defense counsel was concerned about getting into "some other events that happened" apparently relating to the seizure of drugs. The AUSA indicated he did not intend to introduce evidence about that, and that he did not anticipate defense

counsel opening the door to that subject. The court admonished him to caution the witness not to proceed with any testimony about that matter before the court entered a ruling finding that the door had been opened. (Doc. 160 at 308).

Agent Montellano was the first witness the following morning. He testified that he had contact with the defendant at the Interstate 25 checkpoint north of Las Cruces, New Mexico, and that although defendant initially did not give his correct name, he later did. (Doc. 161 at 16). Defendant was a passenger in a vehicle driven by another individual who provided a fake name. Agent Montellano indicated that he learned defendant's correct name approximately 20-30 minutes after defendant had given him the fake name, and that he was detained following this encounter. Defendant now claims that it was "unfair" to allow introduction of evidence of this arrest when he eventually admitted to his real name and "the situation was eventually resolved at the same time."

Over 100 years ago, the Supreme Court held that "the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt." *Allen v. United States*, 164 U.S. 492, 499, 17 S.Ct. 154, 156, 41 L.Ed. 528 (1896). This remains true today. Evidence of flight is admissible to establish a consciousness of guilt. See, e.g. *United States v. Blackburn*, 2009 WL 2450485 (11th Cir. 2009); *United States v. Blakey*, 960 F.2d 996, 1001 (11th Cir. 1992); *United States v. Borders*, 693 F.2d 1318, 1325 (11th Cir. 1982); see also *United States v. Ballard*, 423 F.2d 127, 133 (5th Cir. 1970) ("[I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.") (quoting Wigmore, Evidence, § 276 (3d ed. 1940)). Therefore, because the court did not err in admitting this evidence, appellate counsel was not ineffective for failing to challenge the court's ruling on appeal.

**Ground Eleven**

Defendant contend that appellate counsel was constitutionally ineffective when he failed to appeal the district court's denial of defendant's Rule 29 motion for judgment of acquittal.[7]  Defendant contends that there was insufficient evidence to prove the crime because he had made no confession, he was not tape recorded by any government witnesses, he was not caught with drugs or drug paraphernalia, the government did not introduce financial evidence against him and because virtually the government's entire case was based on the testimony of alleged co-conspirators.  Defendant notes that telephone records were the only physical evidence allegedly linking defendant to the conspiracy charge.  He asserts that because the elements of the crimes were lacking appellate counsel was constitutionally ineffective for failing to raise this basic issue on appeal.

In determining whether there was sufficient evidence to support a guilty verdict, the appellate court reviews the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices in the government's favor.  *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1175 n.2 (11th Cir. 2006) (citing *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997)); *United States v. Johnson*, 485 F.3d 1264, 1269 n.6 (11th Cir. 2007) (citing *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002)).  To uphold the trial court's denial of a motion for a judgment of acquittal, the appellate court need only find that a reasonable factfinder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt. *United States v. Fallen,* 256 F.3d 1082, 1087 (11th Cir. 2001) (citing *United States v. Keller*, 916 F.2d 628, 632 (11th Cir. 1990)); *United States v. Quinn*, 123 F.3d 1415, 1426 (11th Cir. 1997) (citing *United States v. Range*, 94 F.3d 614, 616-617 (11th Cir.1996)).  The court is bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant.

---

[7]Federal Rule of Criminal Procedure 29(a) states, in pertinent part: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a).

*United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005).  The fact that the government's case may rest in large part on the testimony of co-conspirators or convicted felons whose testimony inures to their benefit does not require the reversal of a conviction.  *United States v. Calderon*, 127 F.3d 1314, 1424 (11th Cir. 1997)(citing *United States v. Hewitt*, 663 F.2d 1381, 1385-86 (11th Cir. 1981)).

The elements of conspiracy under § 846 are (1) an agreement between the defendant and one or more persons, (2) to commit an unlawful act or a lawful act by unlawful means.  *United States v. Arias-Izquierdo,* 449 F.3d 1168, 1182 (11th Cir. 2006) (citing *United States v. Toler*, 144 F. 3d 1423, 1426 (11th Cir. 1998).  The government need not prove that defendant knew every detail or participated in every stage of the conspiracy, *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002) (citing *United States v. Diaz*, 190 F.3d 1247, 1254 (11th Cir. 1999)).  However, the government must prove that defendant "knew the essential nature of the conspiracy." *Id.* (quoting *United States v. Payne*, 750 F.2d 844, 859 (11th Cir. 1985)).  And, direct evidence of a formal agreement is not required; rather "a common purpose and plan may be inferred from a development and collocation of circumstances."  *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001); *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998) (crime of conspiracy is "predominantly mental in composition," thus government may demonstrate by circumstantial evidence "a meeting of the minds to commit an unlawful act") (citations omitted); *Arias-Izquierdo,* 449 F.3d at 1182 (citing *United States v. Toler*, 144 F. 3d 1423, 1426 (11th Cir. 1998)).

The evidence at trial reflected that coconspirators agreed with the defendant and/or Duncan Walton to travel from California to Florida to deliver cocaine that had been secured to their bodies.  The defendant strapped the cocaine to the couriers and gave them instructions for the trip, collected or was present when Walton collected the cash that was sent from Florida to California as payment for the cocaine, and instructed coconspirators on avoiding arrest once charges were filed in relation to drug trafficking activities.  The witnesses admitted their role in the

conspiracy as well as the fact that they hoped to receive sentence reductions as a result of their testimony and were subject to cross examination by the defense. Taking the evidence in the light most favorable to the government, the evidence was certainly sufficient to support the charges against him. Therefore, any appellate challenge to the trial court's ruling on the Rule 29 motion would not have succeeded and hence appellate counsel was not constitutionally ineffective for his failure to raise this issue on appeal.

Accordingly, it is respectfully RECOMMENDED:

That defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (doc. 203) be DENIED.

At Pensacola, Florida, this 22nd day of December, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).